## Sprague *v.* Sprague, Appellant.

Argued September 13, 1972.  Before WRIGHT, P. J.,
WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and
PACKEL, JJ.

*John R. McConnell,* with him *David S. Markson,* and *Morgan, Lewis & Bockius,* for appellant.

*Edwin P. Rome,* with him *Blank, Rome, Klaus & Comisky,* for appellee.

OPINION PER CURIAM, November 16, 1972:

The disposition of divorce proceedings, referred to masters is at all times within the control of the courts of common pleas, which by proper order or rule should provide for a more expeditious determination than was made of the present case.

The procedural question was very ably covered by the opinion of the court below wherein it sets forth the following:

## I.

### THE PROCEDURAL QUESTION

"Unusual difficulties were encountered by the Master in scheduling hearings in the case. On a number of occasions, hearings which had been fixed had to be cancelled because of the busy schedule of counsel for the defendant. In any event, the litigation was protracted far beyond the normal period required for the disposition of contested divorce cases. It reached a point where we determined that we had a duty to exercise our power of supervision and to intervene in order to bring the litigation to a close. Geyer v. Geyer, 124 Pa. Superior Ct. 313. We were of the opinion that decisive action was required. Accordingly we forwarded the letter dated December 15, 1971 to the Master and to counsel for the parties.

"Counsel for the defendant contends that the letter by the Master, dated December 21st, fixing a hearing for December 28th, was in violation of the Philadelphia local rule requiring ten (10) days' notice of the schedul-

ing of a Master's meeting. This rule applied only to the first meeting to be held by the Master in order to give the parties ample notice that hearings in the nature of a trial are to commence. It is not intended to apply to subsequent hearings because the rules contemplate an expeditious conclusion of the hearings once they commence, on a day-to-day basis, if possible. The Master, upon receipt of our letter, called the offices of both attorneys. He was advised by the office of the defendant's attorney that December 28th would be an acceptable date and notices were mailed.

"Counsel for defendant, exhibiting the remarkable indifference to both the Master and the Court which he exhibited during this entire phase of the proceedings, made arrangements to go out of the city without notifying the Master.

"At the request of defendant's counsel, we arranged a conference in chambers, which was held on January 4, 1972, attended by counsel for both sides, for the purpose of hearing an explanation by counsel for the defendant and also to fix hard and fast rules in the event that further hearings were to be ordered. To that end, we requested counsel for the defendant to state an offer of proof and the names of the witnesses whom he intended to call. Counsel for the defendant flatly refused to accede to either request, contending that the Court had no authority to request him to do so.

"After leaving the conference, counsel for defendant prepared an answer to the amended complaint and, on the same day, served a copy of this answer upon the Court. The amended complaint was filed on July 28, 1970 and, more than seventeen months later, the defendant filed the answer to the amended complaint, which contained new matter. Obviously, if a reply to the new matter was required, the already unconscionable delay would have been further protracted.

"On January 5, 1972 we issued an Order with a prefatory explanatory statement and directed the Master to close the hearings and to file a Report. At this point, the defendant had completed her testimony in her own defense and counsel for the plaintiff waived the right of further cross-examination, which had begun but which had not been completed.

"The defendant had admitted in her testimony that she had committed adultery with John Swartz on a number of occasions. The defense which she wishes to offer was the defense of recrimination. This is an affirmative defense and the defendant has the burden of proof. Rech v. Rech, 176 Pa. Superior Ct. 401; Isaacs v. Isaacs, 149 Pa. Superior Ct. 508. Modern discovery procedures, particularly when invoked by the Court, require the disclosure of names of witnesses and certainly it was within the power of this Court to request an offer of proof, so that proper instructions could be issued to the Master to assure expeditious termination of the litigation.

"Nevertheless, we gave counsel for the defendant another opportunity. On January 19, 1972, we allowed a rule to show cause on a petition presented by counsel for the defendant requesting that we vacate our Order closing the hearings, and requesting that we refer the case back to the Master. At argument on this rule, the attorney who appeared for counsel for the defendant was asked if an offer of proof and the names of witnesses would be submitted, and again this request by the Court was refused.

"During the course of the hearings and thereafter, there has been a consistent pattern of delay on the part of defendant's counsel. As stated by the Master in his Report: 'In light of the fact that this matter has been pending for approximately two years, the Master having been appointed April 23, 1970, the closing of the

record after the non-appearance of Defendant or her Counsel at the hearing scheduled December 28, 1971 was fully justified. The repeated unavailability of Defendant and her Counsel for hearings scheduled by the Master is tantamount to a wilful attempt to delay the resolution of this matter indefinitely.'

"After the entry of our Order of February 1, 1972, discharging the defendant's petition to refer the case back to the Master, the defendant filed a petition for Writ of Special Certiorari, requesting the Supreme Court of Pennsylvania to exercise its Kings Bench jurisdiction and to direct that our Order closing the hearings be vacated and to refer the case back to the Master for further hearings. We filed an answer to this petition and, on March 9, 1972, the petition for a Writ of Special Certiorari was dismissed by the Supreme Court of Pennsylvania.

"We are of the opinion that the defendant was offered every opportunity to present her defense and was in no way deprived of due process."

The defendant had ample opportunity to present whatever defense she might have had and in fact the testimony of the defendant had been completed on the record. The constitutional rights of the defendant were adequately protected by the action of the court below.

We do not believe this Court should become some kind of super administrator to regulate the courts below in discretionary matters but should only interfere where there is a manifest abuse of discretion which is not present here.

Order affirmed.

---

DISSENTING OPINION BY PACKEL, J.:

I find it unnecessary at this time to consider whether the record supports a finding of divorce because the

court below erred in closing the proceedings without giving any prior notice of such action.

On December 15, 1971, the court below, because of delays, wrote[1] the master in divorce and counsel for both sides that: ". . . this Court would respectfully suggest that you schedule dates for hearings, with the understanding that no continuances will be accepted for any reason whatsoever. If a party is not able to attend a scheduled Master's hearing, you are directed to proceed with the hearing in the absence of that party." Appellant's counsel and his client, for diverse reasons, did not appear at a master's hearing on December 28, 1971. The lower court directed the master to close the proceedings even though no prior notice of such an order was given to counsel for appellant. Appellant's counsel requested a conference about the order. A conference was held on January 4, 1972, during which appellant's counsel was asked to give the names of witnesses and an offer of proof. He refused to do so. On the following day, a formal order, directing the closing of hearing, was filed. The order was thereafter twice reconsidered by the court but remained unchanged. A petition to the Supreme Court for a writ of special certiorari was also denied.

If the original order was invalid, affirmations of that order are likewise invalid. The denial of special certiorari by the Supreme Court as to a non-appealable order does not preclude this Court from reviewing that order when an appeal is taken to this Court from a final order. The issue of the validity of the original order is therefore properly before us.

The lower court's letter of December 15, 1971, was only a polite suggestion, and made no reference to a compulsory closing of hearings. The direction of the

---

[1] The letter was not a notice of any matter of record.

court, on or about December 28, 1971, to close the hearings was without any notice or hearing. That determination was a significant step in the proceedings. Due process of law requires that a party be given notice of every new significant step in the proceedings and a reasonable opportunity to be heard. *Griffin v. Griffin*, 327 U.S. 220 (1946). The unconstitutionality of the order was not cured by the granting of an informal conference in which a demand was made for the furnishing of information, since no notice of such a demand had been given.

The decree should be reversed and the matter remanded for hearings to be held by the court below to bring the matter to a prompt final determination.

SPAULDING, J., joins in this dissenting opinion.