J-A22013-17

2018 PA Super 107

| | |
|---|---|
| HEATHER A. FOTOPOULOS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAMES F. FOTOPOULOS | |
| Appellant | No. 2251 EDA 2016 |

Appeal from the Order Entered June 28, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2010-FC-0234

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

OPINION BY BOWES, J.:                                    **FILED MAY 02, 2018**

James F. Fotopoulos ("Husband") appeals from the order entered June 28, 2016, amending the preliminary order and decree to permit entry of the June 6, 2016 divorce decree. We affirm.

Husband and Heather A. Fotopoulos ("Wife") married on June 25, 1995, and three children were born of the marriage. Wife was the breadwinner, as Husband's only income source since 2005 consisted of Social Security Disability ("SSD") and some unprofitable business ventures. The parties separated on February 18, 2010, although they both remained in the marital residence until February 2013. At that time, Wife moved close by to facilitate the shared physical custody of the children. Although Husband wanted to stay in the marital residence, it was initially unclear

* Retired Senior Judge specially assigned to the Superior Court.

whether that was a financially viable option, as the marital home was mortgaged and subject to a home equity loan. The couple's other assets included two bank accounts, an engagement ring, a Greek coin, an Emmit Smith print, and two cars with outstanding loans. The total value of the marital assets was less than $100,000.

Wife commenced this action in divorce, custody, and equitable distribution against Husband on or about February 18, 2010. Husband countered seeking divorce, equitable distribution, custody, and alimony *pendente lite* ("APL"). Husband did not make any claim for counsel fees. Wife filed a motion for appointment of a master for the divorce and equitable distribution actions, and Richard Betz was appointed by the court to serve as Master.

On June 12, 2012, Husband filed a petition for interim counsel fees and expert expense, which he subsequently amended. On January 22, 2013, the court granted the motion, despite noting that Husband's household net income exceeded Wife's. The court characterized the $7,500 award as an advance to Husband, and anticipated that Wife would be reimbursed when the marital assets were distributed.

Husband sought and received child and spousal support, and an interim custody order was entered granting the parties shared physical and

legal custody of the children.[1]  Husband subsequently withdrew his claim for spousal support and made a claim for alimony *pendente lite* ("APL") instead. After a hearing before Master Betz on May 16, 2013, Husband was awarded $4,698 monthly for the support of himself and the three children.

The divorce proceeded.  The Master ordered Husband to provide Wife with a copy of his expert report regarding his ability to engage in part-time or full-time employment.  Wife opted not to have Husband submit to a physical examination.

By correspondence directed to the Master dated June 6, 2014, Wife's counsel requested that her expert neurologist, Martha Lusser, M.D., be permitted to testify via telephone at the hearing on June 23, 2014.  Wife's counsel noted therein that the parties had agreed that their respective vocational experts could testify via telephone.  However, Husband's counsel would not consent to Dr. Lusser be permitted to so testify.  Wife's counsel represented that Dr. Lusser had requested this accommodation because she was scheduled to undergo chemotherapy that morning and the treatment would leave her too tired to travel to the courthouse to give testimony in

---

[1]  Husband filed an appeal from the custody order to this Court, which we quashed as interlocutory on November 13, 2013.  Wife sought counsel fees and costs related to that appeal from this Court, which we denied without prejudice to seek them from the trial court.  The trial court granted Wife's motion and awarded $12,800 in fees and costs.  Husband appealed, and this Court vacated that order.  **See Fotopoulos v. Fotopoulos**, No. 354 EDA 2015 (Pa.Super. filed Aug. 10, 2015).

person. Husband's counsel objected, alleging that his client would be seriously prejudiced if such an important witness would be permitted to testify via telephone. The Master ruled that Dr. Lusser could testify by phone, Husband filed an exception to the ruling, and the trial court overruled the exception.

On February 27, 2014, Husband filed a second petition for interim counsel fees and expenses for purposes of obtaining a medical expert. The trial court denied the petition after a conference. Husband sought *de novo* review, and the court held a hearing on the petition on June 23, 2014. Again, the court denied fees and expenses. That denial forms the basis for Husband's claim that he was forced to litigate from a disadvantaged position because he lacked the resources to obtain a medical expert to define his earning capacity.

Prior to the commencement of the Master's hearing, Master Betz held a pretrial conference where, *inter alia*, the parties stipulated to the telephonic testimony of their respective vocational experts. There was no discussion about the telephone testimony of Dr. Lusser at that time. At the Master's hearing, Husband did not introduce any testimony from a medical provider with regard to his present physical condition and employability based on that condition. Rather, Husband offered the medical records and reports of his treating physicians, and the telephonic testimony of vocational expert, Dr. Robert A. Cipko. Dr. Cipko concluded, based on his review of

Husband's medical records, some testing, and an examination, that Husband was unable to work at any gainful employment. On cross-examination, Dr. Cipko was presented with reports and records from Husband's treating physicians that he had not seen when he prepared his report. Those physicians opined that Husband was capable of gainful employment, albeit sedentary, and Dr. Cipko deferred to those experts.

Following two days of testimony, the Master issued his report on October 1, 2014. Both parties filed exceptions.[2] After a thorough review of the record, the trial court adopted the Master's findings of fact. It granted Wife's exceptions and granted Husband's exceptions, in part. Preliminary Order and Decree, 9/15/15, at 1. The court did not enter a final divorce decree as there were outstanding issues involving equitable distribution. Nonetheless, Husband appealed to this Court, and we quashed the appeal as interlocutory. Husband then twice requested entry of a final divorce decree, which Wife opposed, and the court denied. When it became apparent that the marital home could not be sold until a divorce decree was entered, Wife filed a petition to amend the interim order, which was granted. Husband appealed again, complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court

---

[2] Husband filed ninety-one exceptions; Wife filed three.

issued its Rule 1925(a) opinion.  Husband presents three questions for our review:

I.     Did the court below commit an abuse of discretion and an error of law when it refused to make a determination that the divorce master erred when he permitted the telephone testimony of a crucial expert witness for the Plaintiff who was a physician who testified unequivocally that had she believed she was testifying in court she would have first examined the Appellant before giving an opinion?

II.    Did the court below commit an abuse of discretion and an error of law when it failed and refused to make an order awarding Appellant interim counsel fees and expenses so that he could retain a medical expert to testify on his behalf when the earnings and earning capacity of the parties were completely disparate?

III.   Did the court below commit an abuse of discretion and an error at law when the Appellant was denied his fundamental Fifth and Fourteenth Amendment rights and Pennsylvania constitutional right to a fair hearing?

Appellant's brief at 5 (unnecessary capitalization omitted).

Husband's first issue is a challenge to the Master's authority to permit Wife's medical expert, Dr. Lusser, to testify via telephone, as well as his exercise of discretion in doing so.  The following principles guide our review.  "Our role as an appellate court is to determine whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure."  *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa.Super. 2005).  "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence."  *Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super.

2006) (quoting **Hayward v. Hayward**, 868 A.2d 554, 559 (Pa.Super. 2005)).

Husband concedes that Pa.R.C.P. 1930.3, entitled Testimony by Electronic Means, permits telephone testimony at a domestic relations hearing in certain circumstances. He maintains, however, that the Rule requires a court order, not permission of the Master, and that Wife failed to obtain such an order. He relies upon the specific language of Pa.R.C.P. 1930.3, which provides in pertinent part:

> With the approval of the court upon good cause shown, a party or witness may be deposed or testify by telephone, audiovisual or other electronic means at a designated location in all domestic relations matters.

Pa.R.C.P. 1930.3.

Wife counters that Husband did not object to Dr. Lusser's telephonic testimony on the ground that the Master lacked authority to make that ruling under Rule 1930.3. Furthermore, she contends that, since "court" is not defined in Pa.R.C.P. 76, the rule containing applicable definitions, there is no support for Husband's contention that Rule 1930.3 requires a court order. The Rule simply requires "approval" by the court, and Wife contends that the trial court's ratification of the Master's ruling in this regard satisfied the rule.

The issue Husband raises is a novel one. We note preliminarily that Husband did not allege that the Master lacked authority to rule on the

admissibility of telephonic testimony when he objected to Wife's request. Furthermore, the local rules of Lehigh County provide that a party who is aggrieved by a ruling by a Master at a pretrial conference may seek immediate court review. Husband did not renew his objection to the testimony at the pre-trial conference or seek a ruling from the court prior to Dr. Lusser's testimony.

As Wife correctly points out, the rules of civil procedure do not define "court" or "master." Under the Judiciary Code, 42 Pa.C.S. § 102, a master is an "appointive judicial officer." "Judicial officers" are "Judges, magisterial district judges and appointive judicial officers." *Id*. "Court" is defined as including "any one or more of the judges of the court who are authorized by general rule or rule of court, or by law or usage, to exercise the powers of the court in the name of the court." *Id*. Section 323, entitled "Powers," "grants to each court all of the powers necessary to issue and enter orders essential to the exercise of its jurisdiction and to promulgate such rules as the interest of justice and the business of the court may require." In *Sprague v. Sprague*, 297 A.2d 133, 133 (Pa.Super. 1973), this Court construed Pa.R.C.P. 1920.51 *et seq.*, as placing all proceedings before a master "within the control of the courts of the common pleas."

The rules of civil procedure expressly provide that court-appointed masters may preside over hearings in equitable distribution matters. *See* Pa.R.C.P. 1920.55-2. In doing so, it is contemplated that masters will rule

on evidentiary matters, including the admissibility, scope, and manner of introducing expert testimony. The parties may file exceptions to "the report or any part thereof, to rulings on objections to evidence, to statements of findings of fact, to conclusions of law, or to any other matters occurring during the hearing." Pa.R.C.P. 1920.55-2(b). The trial court hears argument on the exceptions and enters a final decree. Thus, the court approves or disapproves the master's recommendations, rulings, and findings.

We are not persuaded by Husband's argument that the language of the Rule requiring court approval mandates that the trial court issue an order permitting telephonic testimony. Where a court order is required, the rules so state. For instance, Pa.R.C.P. 1920.61 specifies that, in the case where a party seeks to take testimony outside the county, that party must file a motion, and the trial court "may authorize and direct the master to take the testimony" of such witnesses upon certain terms. Pa.R.C.P. 1920.61. In contrast, Rule 1930.3 only requires court approval, and there is no language mandating that approval take the form of a court order, or that the approval precede the master's ruling. For the foregoing reasons, we find no merit in Husband's contention that the Master lacked authority to rule on the admissibility of telephonic testimony from Dr. Lusser under Rule 1930.3. That decision was subject to court approval, as required by the Rule, prior to the entry of the final decree.

Husband alleges further that it was an abuse of discretion to permit this critical medical expert witness to testify via telephone, as the Master was unable to judge the witness's demeanor and credibility. He claims that he was unfairly prejudiced by the admission of the telephonic testimony.

The trial court found that good cause was shown for excusing the witness from physically attending the hearing. In addition, the trial court found no unfair prejudice to Husband from the presentation of the testimony via telephone. The court observed that Husband's own vocational expert, Dr. Cipko, testified via telephone, and that Husband did not argue that the Master and the trial court could not judge his credibility. Moreover, the court noted that Master Betz found Dr. Lusser's testimony credible because the physician based her opinions upon her review of Husband's treating physicians' office notes and reports. The expert pointed out inconsistences between Husband's statements about his physical condition and cognitive test scores, and the recent medical records. Dr. Lusser's conclusion that Husband was capable of working with some accommodation for ambulation was consistent with the records of his own treating physicians. We find no abuse of discretion in permitting Dr. Lusser, who was undergoing chemotherapy for cancer, to testify via telephone.

Husband's next claim is that the court abused its discretion when it denied his second petition for interim counsel fees and funds to retain a medical expert. He contends that the court's decision left him "to litigate the

merits of his equitable distribution claim and alimony claim without being able to establish his lack of an earning capacity." Appellant's brief at 13. He argues that **Perlberger v. Perlberger**, 626 A.2d 1186 (Pa.Super. 1993) applies, and mandates reversal "where the appellant is put in this unconscionably disadvantageous litigation position." Appellant's brief at 14.

Wife counters that the court had already awarded Husband the sum of $7,500 to obtain expert testimony and/or an expert report addressing his health and ability to work. Husband procured a vocational expert, Dr. Cipko, who rendered an opinion, based upon review of the records of Husband's treating physicians, that he was incapable of gainful employment. Wife maintains that Husband only sought a medical expert when he learned that she had secured one, a step she took when she became aware that Husband had withheld his treating neurologist's reports and notes from Dr. Cipko, until after he had authored his report.

The following principles govern whether attorney fees and other expenses should be awarded. "The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another." **Busse v. Busse**, 921 A.2d 1248, 1258 (Pa.Super. 2007) (quoting **Teodorski v. Teodorski**, 857 A.2d 194, 201 (Pa.Super. 2004)). In determining whether fees should be awarded, courts examine several factors, including "the

payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." **Smith**, **supra** at 21 (quoting **Perlberger**, **supra** at 1207)). On appeal, we will reverse a determination of counsel fees and costs only for an abuse of discretion. **Id**.

The record establishes the following. Husband suffered from Lupus and was receiving approximately $1,000 per month in SSD. Wife was employed and earning approximately $144,000 per year. Wife, however, was paying both spousal and child support to Husband, which resulted in Husband's net household income exceeding that of Wife. On January 22, 2013, Husband filed a petition for interim attorney fees and expenses to obtain an expert. His petition was granted, although the trial court labeled it an advance, and contemplated that Wife would recoup that money through the equitable distribution of marital assets.

On February 27, 2014, prior to the Master's hearing, Husband filed a second petition for interim counsel fees and expenses. He represented that he required fees in order to retain Michele Petri, M.D., his treating physician, to testify that he was completely disabled. After a conference, the trial court denied the motion by order dated May 1, 2014. The court recited therein that it had considered the current financial circumstances of the parties, and noted that Husband was currently receiving "over half of the parties' total

net monthly income and has already received the sum of $7,500.00, ostensibly, for the expense of expert testimony." Order, 5/1/14, at 1 n.1.

Husband filed a written demand for a *de novo* review in accordance with Lehigh County Local Rule 1920.13. The hearing was held on June 23, 2014, prior to the Master's Hearing. The court again denied the petition, finding that Husband had not met his burden of demonstrating need and, specifically, that he had not demonstrated his inability to pay an expert for the Master's Hearing. The court found further that Husband had $60,000 in outstanding legal fees related to divorce and custody matters, that his monthly income exceeded that of Wife, and that Husband admitted that he could borrow money from family members for expert fees. Order, 6/23/14, at 1 n.1.

In its September 16, 2015 Memorandum Opinion, the trial court recited the relevant factors for awarding attorney fees and expenses, and clarified that the initial $7,500 was an advance that was to be reconciled in the distribution of the marital estate. Memorandum Opinion, 9/16/15, at 16. The court noted that, "husband's household income was greater than that of wife" and that he had conceded as much. *Id*. The court found it unclear whether the initial $7,500 advance to Husband went to pay for an expert or

to pay outstanding attorney fees on the quashed custody appeal.[3]  *Id*.  For all of these reasons, the court rejected Husband's claim that the playing field was not level.

Husband alleges that the trial court and the Master improperly refused to accept evidence of his outstanding legal fees and expenses exceeding $60,000, because some of the expenses were incurred in the custody action. He apparently claims that this obligation constituted the evidence that he needed attorney fees and expenses.  In the same breath, he claims that, under the Divorce Code, 23 Pa.C.S. § 3502, his liabilities and needs should have been considered in determining equitable distribution.

We find that, contrary to Husband's contention, the trial court considered evidence of Husband's outstanding legal fees when it denied his second interim petition for fees and expenses.  Furthermore, while the court noted that, at the master's hearing, Husband failed to differentiate between counsel fees incurred in the dismissed custody appeal and those in the divorce action, the fees were considered as proof of Husband's indebtedness for purposes of equitable distribution, but not as proof of a claim for counsel fees.  Thus, Husband's claim is simply not borne out by the record.

_____

[3] At the February 6, 2015 argument on the exceptions, counsel for Husband represented to the court that the $7,500 advance for interim counsel fee/expert expense was used to pay a vocational expert and $2,000 towards counsel fees.  N.T., 2/6/15, at 3.

Finally, the record supports the trial court's findings regarding attorney fees and expenses. Interim counsel fees and expenses initially were awarded to Husband to permit him to obtain expert testimony regarding his ability to work. When Husband asked a second time for interim fees and expenses to obtain expert medical testimony for the same purpose, the trial court found that he failed to make the requisite showing of need. In light of the fact that Husband had a higher net income than Wife, we find no abuse of discretion.

Husband's final contention is that he was denied his fundamental Fifth and Fourteenth Amendment rights, as well as his Article 1, section 1 rights under the Pennsylvania Constitution, when Wife was permitted to take Dr. Lusser's testimony by telephone. Appellant's brief at 14. Husband reiterates his claim that the master's ruling deprived the fact finder of the ability to assess the demeanor and credibility of this expert witness, and suggests that Pa.R.C.P. 1930.3, which permits telephonic testimony upon good cause shown, is constitutionally suspect. That same reason, he contends, is why the procedure of using a master *in lieu* of a trial *de novo* before a judge is unconstitutional.

In response to Husband's constitutional claims, the trial court noted its duty to make a complete and independent review of all of the evidence, including the weight and credibility accorded to the witnesses' testimony. ***Rollman v. Rollman***, 421 A.2d 755, 758 (Pa.Super. 1980). The court

maintained that it did so in this case, as evidenced by the fact that it vacated portions of the Master's Report that were inconsistent with its Preliminary Order and Decree. Trial Court Opinion, 3/17/17, at 49. As the trial court stated, our legislature statutorily created the position of master in domestic relations matters in 23 Pa.C.S. § 3321, and our Supreme Court adopted rules implementing it. *See* Pa.R.C.P. 1920.51 *et seq*. Those rules are followed in Lehigh County.

We note preliminarily that Husband's constitutional challenge is poorly articulated and woefully underdeveloped. Furthermore, where a party purports to challenge the constitutionality of a rule or statute, Pa.R.C.P. 235 and/or Pa.R.A.P. 521 notice must be given to the Office of the Attorney General of the Commonwealth. The Attorney General is charged with defending the constitutionality of all enactments of the General Assembly. *See* 71 P.S. §732-204(a)(3); *see also City of Phila. v. Commonwealth*, 838 A.2d 566, 583 (Pa. 2003). There is no indication that such notice was given. Consequently, we find Husband's constitutional challenge waived. *See Tooey v. AK Steel Corp.*, 81 A.3d 851, 876 (Pa. 2013).

For all of the foregoing reasons, we affirm the trial court's June 28, 2016 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2018