J-S13015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: L.G.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.C.R., NATURAL FATHER | No. 1121 WDA 2018 |

Appeal from the Order Entered July 17, 2018
In the Court of Common Pleas of Butler County
Orphans' Court at No(s): OA NO. 27 of 2018

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER,[*]

MEMORANDUM BY BENDER, P.J.E.:         **FILED APRIL 16, 2019**

M.C.R. (Father) appeals from the order, dated July 12, 2018, and entered on July 17, 2018, that involuntarily terminated his parental rights to his son, L.G.R. (Child), born in August of 2016.[1] After review, we affirm.

On appeal, Father's brief contains the following two questions for our review:

1. The [c]ourt erred when it neither allowed nor considered testimony and evidence concerning Father's reunification efforts or explanation for lack thereof after the date Children and Youth Services filed its [p]etition for [i]nvoluntary [t]ermination. Father contends that 23 Pa.C.S. § 2511(b)[] preclusion from considering such testimony and evidence violates right to due process under the Pennsylvania and United States Constitutions.

2. The [c]ourt erred when it did not allow rebuttal testimony or evidence from Father that his failure to make progress towards reunification was due to violation of his due process rights in his Allegheny County criminal case.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] J.N.G. (Mother) signed a consent to adoption in February of 2018 and has not filed an appeal, nor is she a party to the instant appeal.

Father's brief at 11.  Father combines his arguments as to both issues into one in the argument section of his brief.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.  Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict.  We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)).  The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid.  *R.N.J.*, 958 A.2d at 276.  Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence.  *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).  If competent evidence supports the trial court's findings, we will affirm even if

the record could also support the opposite result. ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable Kelley T.D. Streib of the Court of Common Pleas of Butler County, filed on November 8, 2018. We have also reviewed Judge Streib's Findings of Fact and Memorandum, issued on July 12, 2018, and incorporated into the opinion filed pursuant to Pa.R.A.P. 1925(a)(2). We conclude that Judge Streib's well-reasoned opinion properly disposes of the issues raised by Father. Of particular note, Judge Streib pointed out that Father was not precluded from producing any testimony or evidence at the termination hearing and that all evidence and testimony presented was considered. Moreover, Judge Streib emphasized Father's failure to contact or take advantage of his liberal visitation schedule that was in place even before his incarceration began. Additionally, we agree that it is evident that Father's incarceration was not the sole basis for the termination of his parental rights. Accordingly, we adopt Judge Streib's opinion as our own and affirm the order appealed from on that basis.[2]

_____

[2] Father should also be aware that we could find his constitutional challenge to the language contained in 23 Pa.C.S. § 2511(b) to be waived for failure to give notice to the Pennsylvania Attorney General. ***See*** Pa.R.A.P. 521 (relating to notice to attorney general of challenges to constitutionality of statute); Pa.R.C.P. 235 (same); ***Fotopoulos v. Fotopoulos***, 185 A.3d 1047, 1055 (Pa. Super. 2018) (finding waiver of husband's constitutional challenge to a

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/16/2019

---

rule regarding the allowance of testimony by electronic means where there was no indication that husband gave notice to the state attorney general and his argument on appeal was poorly articulated and woefully underdeveloped).

## IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA
## ORPHANS' COURT

IN RE:
      L.G.R.
            O.A. No. 27 of 2018

### 1925(a)(2) MEMORANDUM OPINION

M.R. ("Father") filed his notice of appeal on August 9, 2018. Father is appealing the Decree of Termination of Parental Rights dated July 12, 2018, and docketed on July 17, 2018. At the termination of parental rights hearing, Father, incarcerated at the time, appeared alongside his court-appointed counsel. The date of entry of this Court's decree terminating Father's parental rights is July 17, 2018. *See* Pa.R.A.P. 108(b). The decree terminating Father's parental rights to L.R. ("Child") was properly served. Attached is the Findings of Fact and Memorandum dated July 12, 2018 which is incorporated herein.

When reviewing an appeal from a decree terminating parental rights, the standard of review is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re M.Z.T.M.W.*, 163 A.3d 462, 464 (Pa. Super. 2017).

Father sets forth the following in his concise statement to matters:

1. The Court erred when it neither allowed nor considered testimony and evidence concerning Father's reunification efforts or explanation for lack thereof after the date Children and Youth

NOV 8 2018 AT 9:04
REC'D ROW & OC BUTLER COUNTY PA

Services filed its Petition for Involuntary Termination. Father contends that 23 Pa.C.S. §2511(b) preclusion from considering such testimony and evidence violates his right to due process under the Pennsylvania and United States Constitutions.

2. The Court erred when it did not allow rebuttal testimony or evidence from Father that his failure to make progress towards reunification was due to violation of his due process rights in his Allegheny County criminal case.

Father's Concise Statement at 1-2.

The Court will first address Father's Concise Statement 2. Father asserts that "the Court erred when it did not allow rebuttal testimony or evidence from Father that his failure to make progress towards reunification was due to violation of his due process rights in his Allegheny County criminal case." The record does not support Father's claim. At no time did Father's counsel attempt to introduce rebuttal testimony or evidence. At no time did the court preclude Father's counsel from introducing any evidence or testimony as to Father's progress. Father's counsel called two witnesses at trial, Maternal Grandmother, ~~░░░░░░░░░~~, and Father. The Court sustained two objections as to relevance of testimony on Act 101. Otherwise, all of Attorney Magnusen's questions and answers were entered into the record. All of Father's testimony was entered into the record. Father's three exhibits were admitted into the record. Following Father's testimony the Court inquired: "anything else you want to present to the Court, Ms. Magnusen?" She responded, "no, ma'am." (T.p. 118 L. 13-15)

The Court permitted all of Father's evidence and testimony. The Court heard and considered Attorney Magnusen's legal argument.[1] The Court permitted all of Attorney

---

[1] The Court entertained Attorney Magnusen's legal argument set forth in the transcript. p. 97 L 21 through p. 100 L 25. The Court found the argument irrelevant (or without merit) to the instant issue. However, the Court permitted all evidence including Father's criminal docket into the record.

2

Magnusen's cross-examination of other witnesses into the record. At the conclusion of trial, Attorney Magnusen did not argue or raise any issue as to additional evidence or testimony. There is nothing in the record to support Father's Concise Statement 2.

In Father's Concise Statement 1, Father asserts two issues. The first is that the Court did not allow or consider testimony and evidence of Father's reunification efforts after the date of the filing of the Petition. He also asserts that portions of 23 Pa.C.S. §2511(b) are unconstitutional.

As to Father's assertion that the court did not "allow" testimony and/or evidence of Father's reunification efforts, the Court would incorporate the explanation set forth above as to Concise Statement 2. At no time was Father precluded from offering testimony or evidence on the record.

The Court did consider all of the evidence and testimony placed on the record.[2] The Court is unclear as to Father's argument to the first half of Concise Statement 1, but will attempt to address all possible averments.

The Petition for Involuntary Termination of Parental Rights of Natural Father, ▓▓▓▓▓
*M. C. R.*
▓▓▓▓▓▓▓▓▓▓▓, was docketed April 9, 2018 which alleged that Father had not completed all goals set forth in Child's permanency plan, specifically that Father failed to complete court ordered services within the time frame set forth under the Adoption and Juvenile Acts and that his continued incarceration clearly evidence that he could not or would not timely remedy the conditions which led to Child's placement. Father was served with notice on May 24, 2018.

---

[2] Father did not assert in his Concise statement of Matters Complained of on Appeal that the Agency failed to prove by clear and convincing evidence all elements of 23 Pa.C.S.A. § 2511 (a)(1), (2), (5), (8) and (11). Therefore, this Court will not address its analysis under §2511(a).

3

Firstly, Father's post-petition filing reunification efforts are specifically prohibited under §2511(b) as to sections 2511(a)(1) and (8) in the instant matter.

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §2511(b)

Secondly, as to §2511(a)(2), (5), and (11), the Court should consider all efforts on behalf of Father in its analysis pursuant to §2511(b) as they would relate to the developmental, physical and emotional needs and welfare of the child. This could also include the bond between parent and child as well as what negative impact, if any, the termination of parental rights would have on Child. In the instant matter, the Court gave full consideration to all of the above.

The Court gave significant weight to Father's lack of contact with Child. Child was detained by the Butler County Children and Youth Agency on August 23, 2016. For the next four months, Father visited Child regularly as per the Child's permanency plan which permitted visits between Father and Child two times per week for two hours at a time. However, in 2017, prior to Father's incarceration, his attendance at scheduled visits became sporadic. Father visited one time out of eight opportunities in February, 2017. Father visited twice out of eight opportunities in March. Father visited four out of possible eight opportunities in April. Father did not attend

4

any visits in May.[3] Father visited once in June, July and August with an opportunity for twenty four visits total. Again, Father did not attend any visits in September, and one visit in October prior to his arrest. He had the opportunity for three other visits in October before his arrest that he did not attend. Some of the above visits lasted only minutes. During 2017, Father did not have any other contact with Child through telephone calls, cards, letters, pictures, or gifts.

Likewise, from the time of Father's incarceration on October 16, 2017 until the date of trial, June 4, 2018, Father made no attempts to maintain a relationship with Child through cards, letters, pictures, or gifts from prison. Father did not present any evidence that he was prohibited from doing so.[4]

From August 23, 2016 to June 4, 2018 Father had sporadic supervised visits with Child. Otherwise, Father has no contact or connection with child. During this time, Child was fifteen days old to approximately twenty-two months old. Father and Child did not live as an intact family. There was no evidence of a positive bond between Child and Father. While visits between Father and Child were appropriate and went well, there was no evidence that the bond between Father and Child was any more than that of an uncle or family friend. There was no evidence of a negative bond between Father and Child.

There was, however, evidence of a positive bond between Child and the Maternal Grandmother and Step-Grandfather. Also, Child lived with two half-siblings with whom Child

---

[3] Father was hospitalized for 14 days from May 4-18, 2017, and could not participate in visitation with Child. Father also testified that he did not visit with Child in May for fear of Child becoming ill. Father was still addressing his recovery in late June, 2017.

[4] Exhibit 1 reflects Father filed a Motion for use of Tablet for Work to Confirm Visit with Natural Son in Foster Care on or about February 22, 2017, approximately four months after his incarceration which was denied on March 17, 2017

5

had a positive and loving bond. Child is thriving in the current placement and is involved in family activities. Child is up-to-date in medical care. Child is safe in the current placement.

Given all of the above, the Court concluded that to terminate Father's parental rights would best meet the needs and welfare of Child. The Court further concluded that the harm, if any, to Child in terminating Father's parental rights was outweighed by Child's need for permanency and a loving and stable home.

Father's attorney argues that the court should consider Father's reunification efforts prior to and post petition. Her argument was that Father was arrested on October 16, 2017 for an alleged probation violation and that his Gagnon I hearing was timely held on October 27, 2017. Following that hearing, Father hired an attorney who filed "numerous motions" in Allegheny County including a Writ of Habeas Corpus. Father argued to the criminal court that he needed to be released from custody so that he could continue to reunify [5] with his child. Father was not released, and the Gagnon II hearing was held on or about April 17, 2018. Father was then sentenced to one to three years incarceration.

The only evidence of Father's reunification "efforts" post-petition was Father's criminal attorney attempting to get his Gagnon II hearing scheduled earlier and Father's requests to be released from custody. The court does not find that these steps provide evidence of Father progressing toward the goals set forth in the Child's permanency plan. Father never disputed the probation violations which led to his arrest on October 16, 2017. If true, these violations would in fact demonstrate that Father had made no progress toward reunification. Rather, Father argues that the sentencing which occurred at his Gagnon II hearing was not timely and that the aggravated factors applied were not applicable.

---

[5] The goal for Father and Child at the dependency matter was reunification.

In essence, Father argues that he ran out of time. However, he did not present evidence that he was progressing to a point that he and Child were close to reunification and closing the dependency matter. In fact, in his Concise Statement Father did not dispute that there was clear and convincing evidence sufficient to meet §2511(a) which is the part of the statute focused on the actions of Father. Section 2511(b) is focused on the relationship between Father and Child and considering the needs and welfare of Child.

Father is asking the Court to speculate that if he had been released sooner on his probation violation sentence, that he would have been able to successfully progress toward the timely closure of the dependency matter. The Court cannot so speculate, and the record does not support that position.

Father's next argument in his Concise Statement 1 is that portions of §2511(b) are unconstitutional. The relevant portions of the statute state, "with respect to any petition filed pursuant to subsections (a) (1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." This Court did not consider Attorney Magnusen's constitutional argument since it was not raised at the trial.[6] Father testifies that he will appeal the termination of his rights and continue to appeal because he wants to remain in his child's life. Then the testimony turns specifically to the goal change which is scheduled at the dependency docket concurrent with the Orphan's Court matter.

Q. And what would be your reaction to that?

A. I think the law needs changed.

Q. Did we discuss the constitutionality of that law?

---

[6] Attorney Magnusen asked her client if he "felt" the law was unconstitutional.

**Mr. Montgomery:** Again, that type of an argument, I am going to object as relevant for - - there is no relevance in this courtroom. I mean, that would be, I guess, an argument on appeal.

**Ms. Magnusen:** Your Honor, that is an argument on appeal, but I have to establish something in this court in order to argue it on appeal.

**The Court:** Go ahead, Ms. Magnusen.

**Ms. Magnusen:** Thank you.

Q. Do you feel that law is unconstitutional?

A. Yes.

Q. And didn't we discuss that the Motion for Goal Change could be filed whenever CYS wanted to; it doesn't necessarily have to be at the end of the case?

A. Yes.

Q. And what feelings did you express to me about the constitutionality of that?

A. Well, what happened to the first 12 months I wasn't incarcerated, you know? And then just – I'm getting out of jail. My minimum is in four months.

Q. Your release date is October?

A. 16th. You know, to say that you can't be involved with your son by legal statute just because I'm incarcerated for another four months is kind of crazy to me.

Q. So you want to test that –

A. Absolutely.

Q. – constitutionality of that law?

A. Yes.

T.p. 105 L 17- p. 107 L 1

8

Throughout the latter part of the exchange Attorney Magnusen is clearly referencing the law relevant to goal changes in juvenile dependency matters. She clearly stipulates that the relevancy of the testimony is to establish grounds for appeal.[7] At no time prior to the close of trial does Attorney Magnusen raise the constitutional issue that some or part of 23 Pa.C.S. §2511(b) is unconstitutional, nor did she argue that the Petition should be denied on those grounds. Additionally, Father's parental rights were not terminated solely because he was incarcerated as his testimony reflects. Rather, the Court gave full consideration to all Father did and did not do from the time of child's detention to the termination hearing. Father's counsel did raise a constitutional argument at the start of trial requesting that the Petition be dismissed as violative of his due process rights. Specifically, Attorney Magnusen argued:

MS. MAGNUSEN: Well, the involuntary termination is based on a statute, as you well know, that only gives 12 to 15 months for reunification. If the parent is incarcerated, no matter how well they did at the beginning, even if they get incarcerated at the last week before the hearing, they cannot reunify. He clearly cannot take the child because is incarcerated. Whereas parents who are not incarcerated don't have – they have a chance at least to have the hearing and, at the hearing, be reunified with their child. My client doesn't just for the simple fact that he is incarcerated.

THE COURT: How is that violative of his due process rights?

MS.MAGNUSEN: He does not have the due process of completing the reunification plan which is entered as an Order of Court. So –

T. p. 6 L17- p.7. L7

---

[7] Father did not file an appeal to this Court's Order at DP No. 51 of 2016 on July 13, 2018 changing the goal.

That specific due process argument was not raised in Father's Concise Statement of Errors Complained on Appeal, thus, it is waived.

Lastly, Father asserts that a portion of §2511(b) "violates his right to due process". Undoubtedly, the termination of parental rights implicates a parent's Fourteenth Amendment right to due process. *See In the Interest of A.P.*, 692 A.2d 240, 242 (Pa. Super. 1997) (stating that parents have a "fundamental liberty interest . . . in the care, custody, and management of their children") (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). An individual whose parental rights are to be terminated must be given due process of law, as the termination of parental rights is a constitutionally-protected act. *See In re Interest of K.B.*, 763 A.2d 436, 439 (Pa. Super. 2000) (citing *Santosky, supra*). In the instant matter, Father's due process rights were not violated.

For all of the above-stated reasons, the Court requests that this Court affirm the order dated July 12, 2018, terminating Father's parental rights to Child.

The Butler County Clerk of Orphans' Court is hereby directed to transmit the record to the Superior Court of Pennsylvania immediately.

BY THE COURT:

Kelley T.D. Streib, Judge

Bme

NOTICE OF ENTRY OF ORDER/DECREE PURSUANT TO
PA. O.C. RULE 4.6

NOTIFICATION
THIS DOCUMENT HAS OFFICIALLY BEEN
ENTERED IN THIS CASE BY THE BUTLER
COUNTY CLERK OF ORPHANS COURT ON
11/8/2018

10

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA
ORPHANS' COURT

IN RE:                                          :
    L.G.R.                             :     O.A. No. 27 of 2018
                                       :

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FINDINGS OF FACT AND ORDER OF COURT

**AND NOW,** this 12th day of July, 2018, following a full hearing on the Involuntary

Termination of Parental Rights of Natural Father, *M.L.R.* ("Father"), the

Court makes the following findings of fact.

Petitioner is Butler County Children and Youth Services Agency ("Agency"). Father

appeared and was represented by counsel. Natural Mother, *J.N.G.* ("Mother"),

appeared and was represented by counsel. Mother executed an Adoption Consent[1] on February

27, 2018. L.G.R. ("Child") was born on August ●, 2016.

On August 23, 2016, the Agency detained Child, and Child was adjudicated dependent on

August 31, 2016, due to concerns that Mother was using illegal substances at the time of Child's

birth. At the Adjudication hearing on August 31, 2016, Father made the following admission:

a. That he is the Natural Father of the Minor Child;

b. That he was not under the influence of any drugs or alcohol affecting his
decision making;

c. That he can read, write[,] and understand the English language;

d. That he has read the amended [Dependency] Petition and reviewed the contents
with his Counsel prior to the hearing;

e. That he understands the contents of the amended [Dependency] Petition;

JUL 13 2018 AM11:01
REC'D ROW & OC BUTLER COUNTY PA

---

[1] 23 Pa.C.S.A. § 2711(a).

f. That he understands that he has a right to a hearing requiring the Agency to prove the allegation by clear and convincing evidence;

g. That he specifically admitted to the following: [t]hat he acknowledged paternity of the Minor Child at the hospital and expects his name to be on the birth certificate; that he was aware that the Minor Child, while at the hospital, tested positive for Suboxone, cocaine, and THC; that he was aware that the Minor Child was transferred to another hospital and treated for Neonatal Abstinence Syndrome with morphine; and, he has two misdemeanor charges for Indecent Assault pending . . . and a prior conviction for selling pornography;

h. That he understands by making this admission he is giving up the right to a hearing;

i. That there was no threats or promises made to him for this admission;

j. That he enters this admission voluntarily; and

k. That he is satisfied with the representation he has received from his Counsel.

Master's Supplemental Findings and Recommendations as to Adjudication Hearing of August 11, 2016, at 3-4 (unnumbered).

At the time of Child's detention, Father was facing multiple felony charges. On January 18, 2017, Father was convicted of Corruption of Minors[2] and Indecent Assault of a Person Less than 16 years of Age[3] and he was sentenced to five years' probation and required to register as a tier 2 Megan's Law offender for twenty five years. *See* Exhibit 2. Father was also prohibited from using the internet.

At the outset of the case, Father regularly attended the supervised visitation with Child at the Kinship home, and visits went well. Visits were to occur two times per week for two hours at a time. However, Father's attendance to visitation throughout 2017 became sporadic. Father attended one visit in February, two visits in March, four visits in April, no visits in May, one visit

---

[2]     18 Pa.C.S.A. § 6301.

[3]     18 Pa.C.S.A. § 3126(a)(8).

2

in June, one visit in July, one visit in August, no visits in September, and one visit in October. The Court notes that Father was hospitalized for a two-week period in May 2017, which contributed to his inability to attend visitation during May and June. Father's last visit with Child was on October 13, 2017.

On October 12, 2017, it was reported that Father had been around children, in direct violation of his probation. Father was arrested at his home on October 16, 2017. At the time of his arrest, Father's probation officer recovered internet accessible devices at his home. Following his arrest, Father tested positive for cocaine, and he was subsequently sentence to one to three years' incarceration for violating his probation. Father is currently incarcerated at the Allegheny County jail, and his earliest possible release date is October 16, 2018. The Agency has not received any cards, letters, or gifts for Child on behalf of Father during his incarceration.

Child and Child's two half-siblings were placed with Maternal Grandmother and Step-Grandfather, ~~J.T. R.T.~~ on August 24, 2016, where they are all cared for and bonded with the Kinship providers. Child is doing well in his current placement and is involved in family activities and benefits from ample family engagement. Child is safe in his placement and up-to-date regarding any and all medical and educational appointments. The Kinship providers are ready, willing, and able to adopt Child.

## LEGAL STANDARD

The Agency filed the present petition against Father on April 9, 2018, pursuant to 23 Pa.C.S.A. §§ 2511(a)(1),(2), (5), (8), and (11). The grounds for involuntary termination of parental rights are set forth in Section 2511(a), Title 23 of Pennsylvania Consolidated Statutes which provides in pertinent part:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

3

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, [twelve] months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

(11) The parent is required to register as a sexual offender under [42 Pa.C.S.A. § 9799.10 et seq.] or to register with a sexual offender registry in another jurisdiction or foreign country.

23 Pa.C.S.A. §§ 2511(a).

"It is well-established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants the involuntary termination." *In re*

4

*E.D.M.*, 708 A.2d 88, 91 (Pa. 1998). Moreover, an appellate court need only to agree with a trial court's decision as to any one subsection allowing for termination of parental rights in order to affirm termination of parental rights. *In re S.M.B.*, 856 A.2d 1235, 1240 (Pa. Super. 2004).

Once statutory grounds for termination of parental rights have been met, the Court must then consider whether termination serves the needs and welfare of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. *In re C.L.F.*, 956 A.2d 999 (Pa. Super. 2008). In reviewing the nature and status of the emotional bond, the Court may consider any evidence relevant to the issue. *In re Adoption of R.J.S.*, 901 A.2d 502 (Pa. Super. 2006).

## LEGAL ANALYSIS

The Court holds that based upon the facts, clear and convincing evidence was presented to allow for a termination as to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), & (11). The credible and undisputed facts indicate by clear and convincing evidence that Child has been removed from Father's care since August 2016. Since Child's removal from the home, Father's participation in services and visitation has been sporadic. As a result, Father has failed to make any progress towards reunification. Furthermore, Father has not attempted to contact Child by telephone or other means since Father's incarceration in November 2017. As a result, the Court finds that the conditions which led to Child's removal continue to exist and are not likely to be remedied within a reasonable period of time. Therefore, it is by clear and convincing evidence that the statutory grounds of §§ 2511(a)(1), (2), (5), & (8) have been met.

To meet the requirements of section 2511(a)(11), the this Court must find by clear and convincing evidence that Father is required to register as a sexual offender under 42 Pa.C.S.A. § 9799.10 et seq. or to register with a sexual offender registry in another jurisdiction or foreign

5

country. *See* 23 Pa.C.S.A. § 2511(a)(11). To that end, the record is clear that Father is required to register as a sexual offender as result of his Corruption of Minors and Indecent Assault of a Person Less than 16 years of Age convictions on January 18, 2017. Therefore, it is by clear and convincing evidence that the statutory grounds of § 2511(a)(11) have been met.

Having found that the statutory grounds of § 2511(a) have been met, the Court turns to a review of whether terminating Father's parental rights would meet the needs and welfare of Child. To that end, Child has been living in a pre-adoptive home with his half-siblings since August 2016, where he is bonded with the Kinship family. Child is included in family activities and maintains relationships with the maternal side of the family. Child attends family activities and other family events.

Child is bonded with the pre-adoptive Kinship family. Furthermore, Father has not visited Child since October 2017 and has had little to no contact with Child. The undisputed evidence demonstrates that termination of Father's parental rights would best serve the needs and welfare of the Child. The Court has given primary consideration to the developmental, physical, and emotional needs and welfare of Child and determines that the needs and welfare of Child are best met by the termination of Father's parental right. As such, it is in Child's best interest that Father's parental rights are terminated. Therefore, Father's parental rights are hereby terminated and the Court enters the following:

6