J-S27028-23
J-S27029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.E.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.E.M. F/K/A K.E.M., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 483 MDA 2023 |

Appeal from the Order Entered March 6, 2023
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  016 Adopt 2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.E.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.E.G., A MINOR | : | |
| | : | |
| | : | |
| | : | No. 490 MDA 2023 |

Appeal from the Order Entered March 6, 2023
In the Court of Common Pleas of Cumberland County Orphans' Court
at No(s):  016 ADOPT 2022

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                **FILED OCTOBER 11, 2023**

K.E.M. ("Mother") appeals the March 6, 2023 order denying her petition

to involuntarily terminate the parental rights of C.S.G. ("Father") (collectively,

"Parents") to the parties' biological daughter, K.E.G., born in October 2018.

K.E.G. has also appealed from the same order. After careful review, we affirm.[1]

We glean the factual and procedural history of this matter from the certified record. Parents were never married and their romantic relationship ended shortly after Mother became pregnant with K.E.G., who was born in October 2018.[2] *See* N.T., 7/7/22, at 3-4. In March 2020, Mother obtained a three-year protection from abuse ("PFA") order against Father on behalf of her and her family after Father was accused and, ultimately, pled guilty to stalking and related crimes targeting Mother.[3] *See In re Adoption of K.E.G.*, 288 A.3d 539, 540 (Pa.Super. 2023); N.T., 7/7/22, at 6-9. The record reflects that Father "has visited with [K.E.G.] approximately 10 times, has never filed for custody, and has never provided for Child financially." *K.E.G.*, *supra* at 540. Mother does not have a partner, spouse, or paramour.

On March 16, 2022, Mother filed a petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). Of particular note, however, Mother's petition did not include any averment that

---

[1] Since these consecutively listed appeals involve the same parties, emerge from the same evidentiary hearings, and raise overlapping issues, we consolidate the above-captioned cases *sua sponte* for ease of disposition.

[2] Mother also has an older child, K.M., who is not Father's biological child and is not materially implicated in this appeal.

[3] Specifically, the certified record indicates that on July 6, 2021, Father pled guilty to intercept communications and loitering and prowling at night time.

an adoption of K.E.G. was presently contemplated as required by 23 Pa.C.S. § 2512(b) of the Adoption Act. ***See In re Adoption of M.E.L.***, 298 A.3d 118, 121 (Pa. 2023) ("[A] petition of a parent seeking to terminate the right of the child's other parent . . . must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable."). Rather, Mother asserted that she should be permitted to seek termination of Father's parental rights without relinquishing her parental rights or putting Child up for adoption. ***See*** Petition, 3/16/22, at ¶¶ 20-50.

To that end, her petition was largely devoted to arguing that the adoption and relinquishment requirements attendant to § 2512(b) violated her rights to equal protection and due process pursuant to the Fourteenth Amendment to the U.S. Constitution and Article I, § 26 of the Pennsylvania Constitution. ***Id***. at ¶ 20. Mother also argued that she had demonstrated "cause" for her lack of compliance with § 2512(b).[4] ***Id***. at ¶ 47.

Father did not respond to Mother's petition. Following Mother's filing of the petition, the trial court appointed Amy L. Owen, Esquire, to serve as K.E.G.'s guardian *ad litem* ("GAL") and represent her "best interests." ***K.E.G.***, ***supra*** at 540. However, the same order appointing Attorney Owen explicitly directed her to refrain from advocating for K.E.G.'s "legal interests" in her capacity as GAL. ***Id***. Thereafter, the trial court did not appoint separate legal

---

[4] As discussed *infra*, although Mother did not cite a specific statute, we discern her arguments concerning "cause" arose pursuant to 23 Pa.C.S. § 2901.

- 3 -

counsel for K.E.G. as required by 23 Pa.C.S. § 2313(a), nor did it issue any finding concerning dual representation of K.E.G.'s interests by Attorney Owen.

On July 7, 2022, the trial court held a hearing regarding Mother's termination petition, wherein she testified. Father neither appeared at, nor participated in, the hearing. The same day, the trial court filed an order denying Mother's petition. On appeal, this Court vacated the order after determining the trial court had committed a "structural error" by failing to appoint counsel to represent K.E.G.'s legal interests in light of its order directing Attorney Owen to serve solely as K.E.G.'s GAL in these proceedings. *Id*. at 542. We also noted, in passing, that the trial court had failed to consider whether Mother had established "cause" for her lack of compliance with § 2512(b) pursuant to 23 Pa.C.S. § 2901. *Id*. at 541. Thus, we remanded for appointment of legal counsel without addressing the merits.

Upon remand, when K.E.G. was four years old, the trial court determined there was no conflict between K.E.G.'s best and legal interests and appointed Attorney Owen to represent both. *See* Order, 1/20/23, at ¶ 3 (appointing Attorney Owen to serve as both GAL and legal counsel for K.E.G.); N.T., 3/1/23, at 5-6 (confirming there was no conflict between K.E.G.'s best and legal interests as reported by Attorney Owen).

On March 1, 2023, the trial court held a new termination hearing at which Mother testified again and largely reiterated her earlier arguments concerning constitutionality and "cause" pursuant to 23 Pa.C.S. § 2901. On

March 3, 2023, the trial court filed an order denying Mother's termination petition and finding that: (1) Mother's termination petition was "non-cognizable" due to her failure to aver that an adoption of K.E.G. was contemplated pursuant to § 2512(b); and (2) § 2901 was "not applicable" to the instant case. Order, 3/3/23, at ¶¶ 1-3. Specifically, the trial court found that it was bound to deny Mother's petition by our Supreme Court's holding *In re Adoption of M.R.D.*, 145 A.3d 1117, 1128-30 (Pa. 2016) (reaffirming the requirements of § 2512(b) with respect to parental petitions to involuntarily terminate the rights of another parent). Despite denying the petition, the trial court also issued a finding that Mother had established sufficient grounds for termination pursuant to § 2511(a)(1), (2), and (b).

On March 30, 2023, Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The next day, K.E.G. filed a separate, timely notice of appeal and concise statement of her own. The trial court responded by filing a consolidated opinion explaining its rationale for denying Mother's petition pursuant to Rule 1925(a)(2)(ii).

Mother presents the following issues for our consideration:

I. Whether the trial court, by its [o]rder dated March 1, 2023, erred as a matter of law by denying the petition to involuntarily terminate Father's parental rights based on lack of contemplated adoption, pursuant to the Pennsylvania Adoption Act[?]

II. Whether the trial court, by its [o]rder dated March 1, 2023, erred as a matter of law by imposing the requirement of a contemplated adoption upon Mother and not finding, to the extent

the Adoption Act required Mother to make such a showing, that such requirement violates Mother's right to due process under the Fourteenth Amendment to the United States Constitution?

III. Whether the trial court, by its [o]rder dated March 1, 2023, erred as a matter of law by imposing the requirement of a contemplated adoption upon Mother and not finding, to the extent the Adoption Act required Mother to make such a showing, that such requirement violates Mother's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution?

IV. Whether the trial court, by its [o]rder dated March 1, 2023, erred as a matter of law by imposing the requirement of a contemplated adoption upon Mother and not finding, to the extent the Adoption Act required Mother to make such a showing, that such requirement violates Mother's rights under the Pennsylvania Constitution, including without limitation Mother's civil rights under Article I, Section 26 [of the Pennsylvania Constitution]?

Mother's brief at 4-5. Thus, Mother's brief focuses upon the facial constitutional challenges that she advanced in the trial court, *i.e.*, that the legislature lacked the authority to either (1) encroach upon her fundamental parental rights; or (2) deny to her a right that it granted exclusively to mothers of children conceived by rape.

Concomitantly, K.E.G. has raised the following claims for relief, which implicate the "cause shown" arguments pursuant to § 2901:

1. Whether the trial court, in its [o]rder dated March 1, 2023, docketed on March 3, 2023, erred as a matter of law by denying Mother's petition to involuntarily terminate Father's parental rights in reliance on [**M.R.D.**], when said case is factually distinguishable[?]

2. Whether the trial court, in its [o]rder dated March 1, 2023, docketed on March 3, 2023, erred as a matter of law by denying Mother's petition to involuntarily terminate Father's parental rights and finding [§] 2901 of the Adoption Act inapplicable

- 6 -

without making a determination whether Mother met the standard for "good cause shown" to excuse compliance with the Act in accordance with that section[?]

3. Whether the trial court, in its [o]rder dated March 1, 2023, docketed on March 3, 2023, erred as a matter of law by denying Mother's petition to involuntarily terminate Father's parental rights when the trial court found that Mother satisfied her burden under [§ 2511(a)(1), (2), and (b)], and that termination of Father's parental rights would serve the child's best interests[?]

K.E.G.'s brief at 6-7. We will begin by addressing Mother's arguments.

The constitutional challenges advanced by Mother present questions of law, over which our scope of review is plenary. *See Interest of Y.W.-B.*, 265 A.3d 602, 615 (Pa. 2021). Our standard of review in this context is *de novo*. *See Interest of A.D.-G.*, 263 A.3d 21, 27 (Pa.Super. 2021).

Mother's arguments implicate § 2512(a)-(b), which provides as follows:

**§ 2512. Petition for involuntary termination**

**(a) Who may file.**--A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing *in loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

(4) An attorney representing a child or a [GAL] representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication).

**(b) Contents.**--The following apply:

>    (1) The petition shall set forth specifically those grounds and
>    facts alleged as the basis for terminating parental rights.
>
>    (2) Except as provided in paragraph (3), the petition filed
>    under this section shall also contain an averment that the
>    petitioner will assume custody of the child until such time as
>    the child is adopted.
>
>    (3) If the petitioner is a parent and section 2514 (relating
>    to special provisions when child conceived as a result of rape
>    or incest) applies, or if the petitioner is an agency, the
>    petitioner shall not be required to aver that an adoption is
>    presently contemplated nor that a person with a present
>    intention to adopt exists.

23 Pa.C.S. § 2512(a)-(b).

>    Our Supreme Court has interpreted this statute, as follows:
>
>    Section 2512(a) of the Adoption Act lists the parties who may
>    petition for involuntary termination, including, *inter alia*, an
>    agency or a parent. *See* 23 Pa.C.S. § 2512(a). Critically, unlike
>    in the context of an agency petition, a petition of a parent seeking
>    to terminate the rights of the child's other parent must contain
>    "an averment that the petitioner will assume custody of the child
>    until such time as the child is adopted." 23 Pa.C.S. § 2512(b). In
>    other words, the petitioning parent must demonstrate that an
>    adoption of the child is anticipated in order for the termination
>    petition to be cognizable. We have explained that the purpose of
>    the involuntary termination provisions of the Adoption Act is not
>    to punish an ineffective or negligent parent, or provide a means
>    for changing the surname of the child, but instead to dispense with
>    the need for parental consent to an adoption when, by choice or
>    neglect, a parent has failed to meet the continuing needs of the
>    child.
>
>    Significantly, because a termination petition filed under these
>    circumstances must occur in the context of an anticipated
>    adoption, and because adoption is a statutory right, . . . the parent
>    seeking termination must strictly comply with all pertinent
>    provisions of the Adoption Act in order for the adoption to be valid.

***M.E.L.***, ***supra*** at 121 (cleaned up).  Thus, when a parent files a termination petition without the required averment that an adoption of the subject child is anticipated, our precedent provides that § 2512(b) has not been met and the trial court cannot consider the substantive merits of the petition under § 2511(a) and (b).[5]  ***See M.R.D.***, ***supra*** at 1126 ("[B]ecause it is Mother who is seeking to terminate Father's parental rights, rather than an agency, under existing Pennsylvania law, Mother must demonstrate that an adoption of [the child] is contemplated in order for the termination petition to be cognizable.").

We emphasize that an adoption of K.E.G. is not contemplated here. Furthermore, Mother does not dispute her failure to satisfy § 2512(b).  Rather, as detailed above, Mother's argument is that § 2512(b) is unconstitutional and violates her rights to due process and equal protection under both the United States and Pennsylvania Constitutions.[6]  ***See*** Mother's brief at 8-22.

_____

[5]  In apparent contravention of this case law, the trial court here saw fit to issue findings regarding the merits of Mother's termination petition despite concluding that the requirements of 23 Pa.C.S. § 2512(b) were neither satisfied nor excused in this case.  We note that "[a]n advisory opinion is one which is unnecessary to decide the issue before the court" and that "the courts of this Commonwealth are precluded from issuing" such determinations. ***Sedat, Inc. v. Fisher***, 617 A.2d 1, 4 (Pa.Super. 1992).  Moreover, such superfluous findings have no appreciable legal effect under Pennsylvania law. ***See Okkerse v. Howe***, 556 A.2d 827, 833 (Pa. 1989).

[6]  To the extent that Mother's brief contains discussion of ***Interest of Z.E.***, 3577 EDA 2018, 2019 WL 3779711 (Pa.Super. 2019) (non-precedential decision) and 23 Pa.C.S. § 2901, we will address these arguments in our consideration of the identical issues raised by K.E.G. in her separate brief.

When a litigant draws into question the constitutionality of a Pennsylvania statute at the trial court level in proceedings to which the Commonwealth is not a party, Pennsylvania Rule of Civil Procedure 235 mandates that party provide notice of their claims to the Pennsylvania Attorney General and submit proof of compliance to the trial court:

> In any proceeding in a court subject to these rules in which an Act of Assembly is alleged to be unconstitutional . . . and the Commonwealth is not a party, the party raising the question of constitutionality . . . shall promptly provide notice thereof by registered mail to the Attorney General of Pennsylvania together with a copy of the pleading or other portion of the record raising the issue and shall file proof of the giving of the notice.

Pa.R.C.P. 235. Furthermore, litigants challenging the constitutionality of a statute in the appellate courts of Pennsylvania are similarly charged by Pennsylvania Rule of Appellate Procedure 521(a) to provide notice of their claims to the Attorney General and file proof of appropriate service:

> **(a) Notice.** It shall be the duty of a party who draws in question the constitutionality of any statute in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is not a party, upon the filing of the record, or as soon thereafter as the question is raised in the appellate court, to give immediate notice in writing to the Attorney General of Pennsylvania of the existence of the question; together with a copy of the pleadings or other portion of the record raising the issue, and to file proof of service of such notice.

Pa.R.A.P. 521(a).

In both the trial and appellate courts of Pennsylvania, "[t]he Attorney General is charged with defending the constitutionality of all enactments of the General Assembly." *Fotopoulos v. Fotopoulos*, 185 A.3d 1047, 1055

- 10 -

(Pa.Super. 2018).  Therefore, litigants challenging the constitutional validity of a Pennsylvania statute in proceedings to which the Commonwealth is not a party must provide the Attorney General with notice and an "opportunity to be heard on the issue." *In re J.Y.*, 745 A.2d 5, 11 (Pa.Super. 2000).  Where a party fails to provide notice in accordance with these requirements, their constitutional claims are deemed to be waived.  *See Fotopoulos*, *supra* at 1055 (citing *Tooey v. AK Steel Corp.*, 81 A.3d 851, 876 (Pa. 2013)).  This Court has extended this practice to involuntary termination proceedings.  *See A.F. v. E.B.V.*, 1078 EDA 2019, 2020 WL 734045, at *3 (Pa.Super. 2020) (non-precedential decision) (finding that a party's failure to comply with either Rule 235 or Rule 521(a) resulted in waiver of all constitutional claims concerning termination petition).

Instantly, the certified record reveals that Mother failed to provide notice, or file proof of such service, in either the trial court or this Court. Accordingly, we are constrained to find that Mother has waived the entirety of her constitutional arguments pursuant to Pa.R.A.P. 521(a).[7]  *See A.F.*, *supra* at *3.  Therefore, no relief is due.

---

[7]  While we reference Pa.R.C.P. 235 in our discussion, insofar as the instant termination of parental rights case was governed by the Pennsylvania Orphans' Court Rules, which lack an express requirement to notify the Attorney General of constitutional challenges, our waiver finding is founded upon the notice requirement outlined in Pa.R.A.P. 521(a).

We now turn to K.E.G.'s arguments. Although stated as separate matters, K.E.G.'s first two claims for relief essentially present the same thesis: the trial court erred by determining that Mother had not established cause to excuse her noncompliance with § 2512(b) pursuant to § 2901. **See** K.E.G.'s brief at 26 ("[T]he trial court erred in failing to apply the 'cause shown' provision of Section 2901 and dispensing with the contemplated adoption requirement under the narrow circumstances of this case."). Our standard of review over a trial court's findings pursuant to § 2901 is *de novo* and our scope of review in this context is plenary. **See M.E.L.**, **supra** at 124.

Section 2901 provides as follows:

Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated, the investigation required by section 2535 (relating to investigation) has been completed, the report of the intermediary has been filed pursuant to section 2533 (relating to report of intermediary) and all other legal requirements have been met. If all legal requirements have been met, the court may enter a decree of adoption at any time.

23 Pa.C.S. § 2901. The phrase "cause shown" is not defined in the Adoption Act. **M.E.L.**, **supra** at 122. Our Supreme Court's "reasonable construction" of the statute provides that the "cause shown" language in § 2901 "'permits a petitioner to demonstrate why, in a particular case, he or she cannot meet the statutory requirements'" of the Adoption Act. **M.E.L.**, **supra** at 127 (quoting **In re Adoption of R.B.F.**, 803 A.2d 1195, 1201-02 (Pa. 2002)). The petitioner must establish cause by clear and convincing evidence. **Id**. Thus, it is within the trial court's "discretion" to determine whether the

"relinquishment of parental rights requirement will be otherwise fulfilled or is unnecessary under the particular circumstances." *Id*.

As detailed above, Mother invoked § 2901 in the trial court, claiming that she should be excused from the adoption requirement at § 2512(b) pursuant to this Court's non-precedential holding *Interest of Z.E.*, 3577 EDA 2018, 2019 WL 3779711 (Pa.Super. 2019) (non-precedential decision). In *Z.E.*, a mother filed a petition seeking to involuntarily terminate the parental rights of a biological father who had "raped" her on "a daily basis for nearly twenty years," which had resulted in the birth of several children. *Id*. at *1. Her termination petition, however, did not aver that an adoption of these children was contemplated and the trial court denied it pursuant to § 2512(b). *Id*. at *5. On appeal, this Court reversed, reasoning as follows:

> Applying [§] 2512(b)'s contemplated adoption requirement **to the unique facts** of this case creates an absurd result where [m]other, a capable and fit single parent who has been the tragic victim of rape committed at Father's hand for decades, cannot remain [the c]hildren's legal [m]other and seek termination of Father's, her rapist's, parental rights.[8]

_____

[8] This Court also noted that this mother's circumstances was a "widespread" plight facing parents throughout the United States, *i.e.*, the inability of victims to terminate the parental rights of their rapists. *Z.E.*, *supra* at *6. Accordingly, this Court, was "mindful to limit the holding of this case to its facts so that the exercise of such discretion does not open the door to terminating the parental rights of one parent by another parent when adoption is not contemplated, and to ensure we do not open the floodgates to . . . gamesmanship." *Id*. at *8 (emphasis added).

Following *Z.E.*, however, our General Assembly enacted 23 Pa.C.S. § 2514, which by its terms applies to all termination petitions filed after December 28,
*(Footnote Continued Next Page)*

*Id*. at *6 (emphasis added).

Instantly, Mother and K.E.G. have both attempted to draw a direct parallel between the horrific facts of ***Z.E.*** and Father's troubling criminal behavior in the instant case. ***See*** Mother's brief in 12 ("Akin to the mother in [***Z.E.***], [Mother] has suffered abuse by her ex-partner[.]"); K.E.G.'s brief at 24 ("While ***Z.E.*** is non-precedential and limited to its facts, the same reasoning in that case is appropriate here given the factual similarities."). Given the explicit factual limitation that this Court placed upon the holding in ***Z.E.*** and the absence of any analogous sexual assault allegations in the instant case, we do not find ***Z.E.*** to be persuasive or apposite. At best, we believe that ***Z.E.*** supports the general notion that a party may seek relief from the adoption requirement at § 2512(b) by raising the applicability of § 2901.

During the pendency of this appeal, our Supreme Court's holding in ***M.E.L.*** opined upon the application of § 2901, which informs and controls our resolution of these arguments. In ***M.E.L.***, a mother sought to involuntarily terminate the parental rights of the father to the parties' biological child,

---

2020. In pertinent part, this statute provides that a petitioner seeking to involuntarily terminate another individual's parental rights pursuant to 23 Pa.C.S. § 2511(a)(7) (relating to "a child conceived as a result of rape or incest") need not aver that an adoption of the child is contemplated. ***See*** 23 Pa.C.S. § 2514(1)(ii). Thus, the specific concern that animated this Court's holding in ***Z.E.*** has largely been addressed by the Pennsylvania legislature.

Instantly, Mother did not seek termination pursuant to § 2511(a)(7) and there is no allegation that K.E.G. was conceived as a result of either incest or rape.

- 14 -

M.E.L. *See M.E.L.*, *supra* at 120. The mother was in a stable, long-term relationship with another partner, but the couple were not married and had no plans to wed in the future. Nonetheless, in conjunction with the termination petition, the mother's partner filed notice of his intent to adopt M.E.L. The trial court granted the mother's petition. *See id*.

On appeal, this Court vacated after concluding that the mother had failed to strictly comply with the statutory requirements of the Adoption Act. *See id*. at 123. Specifically, since the involuntary termination of parental rights "must occur in the context of an anticipated adoption," 23 Pa.C.S. § 2711 of the Adoption Act "requires the parent seeking termination to consent to the adoption, which entails relinquishing his or her own parental rights." *Id*. at 121. Despite this requirement, the mother in *M.E.L.* had not relinquished her parental rights. *See id*. at 122. Although 23 Pa.C.S. § 2903 permits a parent consenting to the adoption of their biological child by a "spouse" to retain their parental rights, this exception did not apply since the mother and her partner were not married. *See id*. at 123. This Court determined the trial court had failed to consider the applicability of § 2901 and remanded for a determination in that regard. *See id*. at 123-24.

Our Supreme Court granted allowance of appeal with respect to the interpretation of § 2901, and clarified the statutory requirements as follows:

> [T]o satisfy the cause exception to relinquishment under [§] 2901 two things must be established. A party must first show why he or she cannot meet the statutory requirements for adoption. . . . Upon this showing, the party may **then** appeal to the court's

- 15 -

discretion by demonstrating with clear and convincing evidence why the purpose of the [statutory requirement] would nevertheless be fulfilled or unnecessary in their case, despite the parties' inability to fulfill the statutory requirements.

*Id*. at 127 (emphasis in original). Thus, the High Court reiterated that a petitioner seeking relief from the Adoption Act's relinquishment requirements under § 2901 must **first** demonstrate why they are legally unable to meet the statutory requirements of the Adoption Act from which they seek relief, before then justifying their lack of statutory compliance. *See id*. at 128.

The Supreme Court opined:

Permitting a parent, such as [the mother], to simply waive the relinquishment requirement in circumstances where she offers her long-term partner as an adoptive resource, but does not first demonstrate why they cannot marry, would allow the "cause shown" exception to swallow the rule, as that parent could proceed with the adoption even if there were no legal impediment to marrying the prospective adoptive parent, rendering the spousal requirements effectively optional, and the stepparent exception to relinquishment under [§] 2903 largely unnecessary.

*Id*. However, the High Court ultimately agreed that the trial court had "precipitously terminated [the father's] parental rights without first evaluating whether [the mother] established cause under [§] 2901." *Id*. at 129. Since the mother in *M.E.L.* had "not provided evidence pertaining to this 'cause' analysis," the Supreme Court affirmed this Court's holding remanding to the trial court for consideration of § 2901. *Id*.

The issue in the above-captioned case is analogous to that of the petitioning parent in *M.E.L.*, who was similarly seeking to involuntarily terminate the rights of the other parent without relinquishing her parental

- 16 -

rights. *See M.E.L.*, *supra* at 121-23. Although *M.E.L.* implicated the relinquishment requirements at § 2711 and Mother has directed her arguments to the adoption requirement at § 2512(b), their positions relative to § 2901 are essentially the same: the parties were requesting termination with respect to another parent without relinquishing their parental rights as mandated by the Adoption Act.

However, unlike the petitioner in *M.E.L.*, an adoption is not contemplated with respect to K.E.G. at all. Rather, Mother wishes to be able to secure termination of Father's parental rights without ceding her parental rights or permitting the adoption of K.E.G. by another individual. We find the following passage from *M.E.L.* generally instructive on this position:

> [T]he relinquishment requirement for adoption and termination of another parent's rights over a child may be seen by some as anachronistic in this day and age, particularly given the changing notion of what it means to be "family." No longer is society's concept of family limited to a mother, father, and their children, as was commonplace at the time the Adoption Act was originally enacted. Today, it is not unusual to see multigenerational families, single-parent families, or . . . families where the parents are live-in partners, rather than spouses. Moreover, our Court is sensitive to the plight of single parents who receive no assistance or benefit from an absent parent, but are precluded from seeking termination of the rights of that parent because they do not have a spouse. Nevertheless, regardless of the wisdom of the . . . relinquishment requirements, the General Assembly has not revisited these provisions, and they remain the law.

*M.E.L.*, *supra* at 129. Thus, we read *M.E.L.* as reaffirming the strict nature of the adoption and relinquishment requirements.

- 17 -

In light of our Supreme Court's guidance in *M.E.L.*, we find the arguments presented concerning "cause" pursuant to § 2901 in this case to be lacking. Specifically, K.E.G. contends that "Mother should not have to get married or relinquish her parental rights, and force a large and unnecessary change upon K.E.G. in order to terminate Father's parental rights[.]" K.E.G.'s brief at 25-26. However, neither K.E.G. nor Mother have offered any argument explaining why Mother is **legally incapable** of offering K.E.G. up for adoption or relinquishing her parental rights. *See M.E.L.*, *supra* at 128 (indicating that before a petitioner may submit argument that the purpose of the Adoption Act will be achieved in the absence of strict statutory compliance, she must "explain why she is **unable** to meet the statutory requirements for adoption"). Thus, Mother has put "the proverbial cart before the horse" by arguing that adoption and relinquishment are unnecessary in her case. *Id*. Pursuant to *M.E.L.* and the cases cited therein, the relevant initial inquiry pursuant to § 2901 is whether a petitioner is unable to comply with the at-issue statute, *i.e.*, there must be a **legal impediment** to the party's strict fulfillment of the Adoption Act's statutory requirements.

Mother's own arguments reveal that she is fully able, but remains unwilling, to place K.E.G. up for adoption and relinquish her parental rights. *See* Mother's brief at 13-14 (conceding that Mother could "give another individual the fundamental right to the direct control, care, and custody of K.E.G." by adoption and "relinquish all of her fundamental rights" in order to

- 18 -

secure termination of Father's parental rights). Rather, Mother's objections are purely ethical in nature. *See id*. at 14 ("Requiring a single parent to relinquish their fundamental rights in order to protect their children is . . . **morally** incorrect." (emphasis added)).

Understandable though Mother's objections may be, it is clear from the certified record that there is no legal obstruction that would preclude her from choosing adoption and relinquishment. This distinction readily separates this appeal from the cases holding that petitioners were "unable" to meet various statutory requirements for the purposes of § 2901. *Cf*. *In re Adoption of M.R.D.*, 145 A.3d 1117, 1128-30 (Pa. 2016) (holding that the parties seeking to adopt were legally unable to marry and, thus, could not satisfy the Adoption Act's marriage requirement); *In re Adoption of R.B.F.*, 803 A.2d 1195, 1199-1200 (Pa. 2002) (same).

Furthermore, unlike in *M.E.L.*, Mother provided both testimonial evidence and extensive argument concerning the application of § 2901 in the trial court. *See* Petition to Terminate, 3/16/22, at ¶¶ 35-47; N.T., 7/7/22, at 3-24; N.T., 3/1/23, at 7-21. Moreover, as noted above, the trial court evaluated and rejected this claim pursuant to § 2901 on its merits. Accordingly, remand to the trial court is not necessary.

Based upon the foregoing, we hold that the trial court properly denied Mother's termination petition as non-cognizable pursuant to § 2512(b). No adoption of K.E.G. is contemplated in the instant case and Mother has failed

to articulate an appropriate legal basis that precludes her from complying with the statutory requirements of the Adoption Act.  Thus, she is not entitled to the benefit of § 2901.  ***See***, ***e.g.***, ***M.E.L.***, ***supra*** at 127-28.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/11/2023